In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2057

MARK ARNOLD, et al.,

*Plaintiffs-Appellants*,

*v.*

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 00-103-C—**Richard L. Young**, *Judge.*

ARGUED DECEMBER 3, 2001—DECIDED JUNE 7, 2002

Before POSNER, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* The plaintiffs sued their union, the United Mine Workers of America, under the Labor Management Relations Act (LMRA), 29 U.S.C. § 301, et seq., for breach of the duty of fair representation, promissory estoppel, and breach of contract arising out of a dispute over distribution of proceeds from a settlement with an employer. The district court granted summary judgment in favor of the union based on the plaintiffs' failure to exhaust internal union procedures before bringing suit. The plaintiffs appeal, arguing that the district court should have excused their failure to exhaust union procedures either because of the union's alleged hostility to the plaintiffs' claims or be-

cause exhausting union procedures would unduly delay their opportunity for a judicial hearing. We reject these arguments and affirm.

## I. BACKGROUND

The United Mine Workers of America is the exclusive collective-bargaining representative for individuals employed in the coal industry throughout the United States and Canada. The union obtained a $1.3 million settlement from the Peabody Holding Company arising from hiring practices at a coal mining facility in Farmersburg, Indiana, which allegedly was contrary to an agreement between Peabody and the union granting preferential job opportunities to certain active and laid-off miners. The union initially decided to divide the settlement proceeds among the 78 members who would have been entitled to employment at the Farmersburg mine if the agreement had not been breached, but complaints from other members, coupled with mass layoffs in the coal industry in Indiana, caused the union to reconsider the fairness of that plan. The union then decided to spread the settlement proceeds among the 905 members that had employment or recall rights at the Farmersburg facility. As a result, the expected shares of the original 78 members slated to receive the settlement decreased from the more than $15,000 they initially expected to about $1,500. Unhappy with the new distribution, 61 of those 78 members sued the union.

The union moved to dismiss the complaint, arguing that the plaintiffs had not exhausted the union's internal grievance procedures. The court allowed the parties to submit additional documentation and treated the union's motion as one for summary judgment. It granted judgment in favor of the union, finding that the undisputed evidence showed that the plaintiffs had failed to initiate a proper appeal under the procedures required by the union's con-

stitution and had not demonstrated any basis for excusing their failure to exhaust those procedures before filing suit.[1]

## II. ANALYSIS

In *Clayton v. UAW*, 451 U.S. 679, 685 (1981), the Supreme Court held that plaintiffs are ordinarily required to exhaust union appeals procedures before bringing suit against their union concerning internal union affairs. *See Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 729 (7th Cir. 1994); *Frandsen v. Bhd. of Ry., Airline, and S.S. Clerks*, 782 F.2d 674, 679 (7th Cir. 1986). The Supreme Court recognized, however, that internal procedures may be lengthy and sometimes inadequate to address the employees' grievances, and held that, in the context of LMRA claims against the union, flexibility in imposing the exhaustion requirement is necessary. *Clayton*, 451 U.S. at 689; *see Fulk v. United Transp. Union*, 108 F.3d 113, 116-17 (7th Cir. 1997); *Stevens*, 20 F.3d at 731. Balancing the policy of providing a judicial forum to enforce the duty of fair representation against the competing policy of encouraging nonjudicial resolution of labor disputes, *see Frandsen*, 782 F.3d at 679, the Court held that "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton*, 451 U.S. at 689 (citing *NLRB v. Marine Workers Local 22*, 391 U.S. 418, 426 n.8 (1968)). This discretionary exhaustion requirement for intra-union disputes fosters "'private resolution of disputes, responsible union self-regulation, union assistance in the interpretation of its governing document, [and] robust union processes,' while at the same time giving

---

[1] The plaintiffs do not contend that any of their claims survive if we affirm the district court on the exhaustion issue, so we confine our analysis to that issue.

the district court the flexibility to allow a case to continue despite the plaintiff's failure to exhaust internal remedies." *Fulk*, 108 F.3d at 116-17 (quoting *Stevens*, 20 F.3d at 732).

In this case, the union's constitution requires that decisions and actions of the district executive boards or International Union officers be appealed to the International Executive Board (IEB), which must meet once every four months. The decision of that board may then be appealed to the International Convention, which meets once every four years. The district court concluded that because plaintiffs did not initiate the first-level appeal (to the IEB), they failed as a matter of law to exhaust the required union procedures. The plaintiffs do not dispute this point on appeal, but argue instead that the district court erred in declining to excuse their failure to exhaust.

A.  Standard of Review

The union argues that we should review the district court's decision regarding whether to excuse the plaintiffs' failure to exhaust remedies for abuse of discretion. We have never explicitly identified the applicable standard in this context, although it is clear from the cases that our review has generally been deferential. *See Stevens*, 20 F.3d at 733; *Hammer v. UAW*, 178 F.3d 856, 858 (7th Cir. 1999); *accord Maddolone v. Local 17, United Bhd. of Carpenters*, 152 F.3d 178, 182 (2d Cir. 1998). The plaintiffs suggest, however, that because we are reviewing the court's decision at summary judgment, we should review the decision de novo, and at least one case has hinted that the usual summary judgment standard applies when the question of exhaustion is presented in this context. *See Sosbe v. Delco Elec. Div. of General Motors Corp.*, 830 F.2d 83, 85 (7th Cir. 1987).

The district court concluded that there were no disputed issues of fact material to the exhaustion requirement, a conclusion we review de novo. *See, e.g.*, *Farmer v. Brennan*,

81 F.3d 1444, 1449 (7th Cir. 1996) ("[W]e review a district court's grant of summary judgment under Rule 56 de novo, to the extent the question is whether there were genuine disputes of material facts or whether the moving party should prevail as a matter of law."). But the district court's further conclusion that, given the undisputed facts, the plaintiffs' failure to follow union procedures should not be excused is an exercise of the court's discretion under *Clayton*, and deferential appellate review is necessary to preserve that discretion, even when exercised at the summary judgment stage. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (when material facts are not in dispute, the district court's decision that laches bars the action is reviewed for abuse of discretion); *Bradley v. Work*, 154 F.3d 704, 708-09 (7th Cir. 1998) (evidentiary rulings are reviewed for abuse of discretion, even when the court is reviewing the grant of summary judgment).[2] Given

---

[2] Plaintiffs do not contend that they were entitled to an evidentiary hearing to resolve any factual disputes, but maintain that the district court must draw all reasonable inferences from the undisputed facts in favor of the plaintiffs. Our review of the record convinces us that the district court did just that, but even if the district court strayed from the summary judgment model and drew inferences adverse to the plaintiffs, we see little reason to substitute our judgment for the district court's, given the case-specific nature of the decision whether to excuse exhaustion. *See Frandsen*, 782 F.2d at 682 ("The different factors and fact patterns in these cases . . . make it clear that it is virtually impossible to predict when the futility exception will apply."). Even when, as in this case, the question may be answered on a paper record, there is little to be gained by duplicating the district court's efforts through de novo appellate review. *Cf. Mars Steel Corp. v. Cont'l. Bank*, 880 F.2d 928, 934-35 (7th Cir. 1989) (en banc) (discussing considerations supporting deferential review of decision to impose Rule 11 sanctions); *Anderson v. Bessemer City*, 470 U.S. 564, 574-75 (1985) (deferential review of district court's resolution of fact-
(continued...)

the nature of the district court's decision in this case, we confine our review to determining whether the district court abused the discretion afforded it under *Clayton*.

## B. Excusing the Failure to Exhaust Union Procedures

In *Clayton*, the Court identified three factors to guide a court's discretion in deciding whether to excuse exhaustion:

> First, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Clayton*, 451 U.S. at 689. If any of these factors are present, the court may properly excuse the employee's failure to exhaust. *Id.*

Plaintiffs claim that the first and third factors apply, and also that the district court erred in employing the *Clayton* factors as if they were exclusive. Although we agree that the *Clayton* factors are not exclusive, *see Hammer*, 178 F.3d at 858, all of the facts and arguments relied upon by the plaintiffs relate squarely to two of the *Clayton* factors— hostility and unreasonable delay—so we focus our attention on those factors.

---

[2] (...continued)
intensive issues appropriate even when based on documentary evidence or inferences from other facts).

### 1. Union hostility to the plaintiffs' claim

Plaintiffs argue that it would have been futile to take their case to the union because: (1) the union's general counsel, Deborah Stern, stated that the union would fight the plaintiffs "to the end," and (2) the union executives who made the decision to distribute the settlement more broadly were the same people who would hear the plaintiffs' appeal. Plaintiffs conclude that these facts show that the union's decision had become "fixed," rendering any appeal futile. We agree with the district court that the plaintiffs failed to show that union procedures were so infected with hostility as to warrant excusing the exhaustion requirement.

Ms. Stern is not a member of any appellate review board within the union. Plaintiffs do not take issue with the district court's observation that "Ms. Stern would not be involved in any decision rendered by the IEB or International Convention." Stern's statement that the union would fight "to the end" therefore tells us nothing about whether the plaintiffs would receive a fair hearing before the IEB or International Convention. Similarly, although one member of the IEB, Vice President Jerry Jones, was involved in the decision to increase the number of recipients of the settlement, there is no evidence that any other member of the eleven-member IEB was involved in that decision. Plaintiffs complain that the district court failed to take Vice President Jones's participation into consideration, but even giving the plaintiffs the benefit of all reasonable inferences, the presence of one potentially hostile member on the IEB does not, without more, demonstrate hostility so pervasive that the plaintiffs could not hope to receive a fair hearing on their claim. The district court was within its discretion in refusing to excuse exhaustion on the basis of the union's alleged hostility to the plaintiffs' claims.

### 2. Unreasonable delay

Plaintiffs next argue that requiring exhaustion would unreasonably delay their opportunity to obtain judicial review of their claim because the International Convention, to which an adverse decision by IEB must be appealed, is required to meet only once every four years. But because the plaintiffs failed to initiate even the first-level appeal at the IEB—which takes only four months and might have resolved their claim—their delay argument is entirely speculative. To excuse exhaustion based on the possibility that a second-level appeal would be unreasonably lengthy would pre-empt any opportunity for intra-union resolution at the first level. This is contrary to one of the policies behind the exhaustion requirement—to encourage nonjudicial resolution of labor disputes. *See Frandsen*, 782 F.2d at 679. Because the district court concluded that there was no basis to excuse the plaintiffs' failure to exhaust the first-level appeal, it was within its discretion in refusing to excuse exhaustion based on the plaintiffs' argument about the second-level appeal. *Cf. Sosbe*, 830 F.2d at 86 (holding that plaintiff must establish futility "at every step of the relevant grievance procedure").

## III.  CONCLUSION

The district court did not abuse its discretion in refusing to excuse the plaintiffs' failure to exhaust union procedures. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*