Nicanor E. CASUMPANG, Jr., Plaintiff,

v.

INTERNATIONAL LONGSHORE, & WAREHOUSE UNION, LOCAL 142, et. al., Defendants.

No. CIV. 98–00775 ACK.

United States District Court, D. Hawai'i.

May 21, 2003.

---

Shawn A. Luiz, Honolulu, HI, Jerry P.S. Chang, Honolulu, HI, for Nicanor E. Casumpang, Jr., plaintiff.

Fred H. Altshuler, Daniel T. Purtell, Laura P. Juran, Altshuler Berzon Nussbaum, Berzon & Rubin, San Francisco, CA, Herbert R. Takahashi, Rebecca L. Covert, Takahashi Masui Vasconcellos & Covert, Honolulu, HI, for John Does 1–10, International Longshore & Warehouse Union, Local 142, Eusebio Lapenia, Jr., defendants.

### ORDER DISMISSING PLAINTIFF'S COMPLAINT

KAY, District Judge.

This matter comes before the Court on Defendants International Longshore & Warehouse Union, Local 142 and Eusebio Lapenia, Jr.'s (collectively "Defendants") Motion for Summary Judgment, filed March 20, 2003 ("Defendants' MSJ"). Plaintiff Nicanor E. Casumpang, Jr. opposes the motion. (Casumpang's Memorandum in Opposition to Defendants' Motion, filed April 17, 2002 ("Plaintiff's Opp.")).[1] For the following reasons, the Court DISMISSES Plaintiff's Second Amended Complaint without prejudice and directs Plaintiff to pursue internal union

---

1. Robert G. Girald filed a Declaration in Support of Defendants' MSJ ("Girald Decl."). Guy Fujimura filed a Declaration in Support of Defendants' MSJ ("Fujimura Decl."). Michael Machado filed a Declaration in Support of Defendants' MSJ ("Machado Decl."). Lapenia filed a Declaration in Support of Defendants' MSJ ("Lapenia Decl."). Daniel T. Purtell, Esq. filed a Declaration in Support Defendants' MSJ ("Purtell Decl.") and a Supplemental Declaration in Support of Defendants' MSJ ("Supp. Purtell Decl."). Casumpang filed a Declaration in Support of Plaintiff's Opp. ("Casumpang Decl."). Shawn A. Luiz, Esq. filed a Declaration in Support of Plaintiff's Opp. ("Luiz Decl.").

procedures for a period not to exceed four months from the date of this Order.

## BACKGROUND

### I. Factual History

Under article II, § 1 of the Constitution and Bylaws (the "Constitution") of the International Longshore & Warehouse Union, Local 142 ("Local 142" or "Union"),[2] full-time union officials must receive approval from the Local Executive Committee ("LEC") and the Local Executive Board ("LEB") before accepting gainful employment outside of the Union.[3] (Ex. "B" to Girald Decl.); (Plaintiff's Ex. "G"). Casumpang worked as a full-time Maui Business Agent for Local 142 from 1995 until his suspension in 1998.

### A. 1997 Election

In 1997, Casumpang ran as one of two candidates for the office of Local 142 Maui Division Director.[4] Casumpang was declared the winner with an eighteen-vote margin of victory on November 26, 1997. Casumpang's opponent, incumbent Roger Tacdol, promptly filed an election complaint alleging various irregularities.[5]

Following a hearing, the Election Investigating Committee ("EIC") recommended that the results be set aside and the election re-run. The LEB sustained Tacdol's challenge and adopted the EIC's recommendation on December 19, 1997. The LEB directed that a re-run election be held within forty-five days of the order.[6]

### B. Investigations

Before re-running the election, Local 142 conducted an eligibility review of all candidates. On December 23, 1997, Local 142 sent a written request to Casumpang for information concerning whether he had improperly engaged in gainful employment while working as a full-time business agent. Casumpang objected to the timing of the investigation and accused certain Local 142 officials of selective prosecution. As the following facts reveal, however, this investigation did not begin in December; nor was it the first time that Local 142 looked into Casumpang's activities.

2. The facts recounted herein are undisputed unless otherwise noted. Although Casumpang's Separate and Concise Counter–Statement of Facts in Opposition to Defendants' MSJ challenges all of the facts and supporting evidence presented in Defendants' Separate Concise Statement of Material Facts in Support of Their MSJ, few facts are actually contested.

3. Article II, section 1 provides:
Elected and appointed full-time officials of [Local 142], while on the Local [142] payroll, shall not be permitted to hold any other gainful position unless authorized by the [LEC] with the approval of the [LEB]. Any official who is reported to be so engaged shall be suspended from office forthwith pending an investigation of facts by the trial committee . . . .
(Ex. "B" to Girald Decl.).

4. Section 401(b) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), codified at 29 U.S.C. § 481(b),

requires that every local labor organization "elect its officers not less often than once every three years by secret ballot among the members in good standing." 29 U.S.C. § 481(b) (1998).

5. Casumpang does not challenge the 1997 election or the subsequent invalidation of the same. See Ex. "A" to Supp. Purtell Decl. The Court recounts these details only to provide a complete factual background.

6. On January 16, 1998, Casumpang filed an appeal of the LEB's decision with Brian McWilliams, president of the International Longshore & Warehouse Union ("ILWU"). McWilliams denied the appeal on March 10, 1998. On October 9, 1998, Casumpang appealed to the Department of Labor. On April 11, 1999, the Department dismissed his appeal as untimely.

### 1. *1995–96 Investigations*

In October 1995, a Local 142 employee filed a sexual harassment complaint against Casumpang. (Ex. "A" to Purtell Decl.). An internal investigation established that Casumpang had "committed multiple violations" of Local 142's sexual harassment policies and the ILWU Financial Code. (Ex. "A" to Purtell Decl.). As a consequence, Local 142 suspended Casumpang for sixty days without pay and informed him that another violation would result in his permanent removal from office. *Id.*

During the sexual harassment investigation, Local 142 began to suspect Casumpang of violating the prohibition against unauthorized gainful employment.[7] (Plaintiff's Ex. "G"); (Ex. "C" to Girald Decl.). On April 2, 1996, Local 142 formally charged Casumpang with working as an electrical contractor while serving as a full-time union official. (Ex. "A" to Fujimura Decl.).

The case was set for trial before the Maui Division Trial Committee ("MDTC"). On April 16, 1996, however, Casumpang stipulated to unintentionally violating article II, § 1 ("1996 Stipulation").[8] (Ex. "B" to Fujimura Decl.). The MDTC did not fine or suspend Casumpang, but he was ordered to "cease and desist from his activity as an electrical contractor" as of April 18, 1996, unless otherwise authorized by Local 142. *Id.*

On April 22, 1996, Casumpang sought permission from the LEC to continue his electrical contracting business. (Casumpang Decl. ¶ 5); (Ex. "C" to Fujimura Decl.). The LEC responded in writing with a request for detailed records (tax documents, employee information, business correspondence, etc.), some of which Casumpang provided. (Ex. "D" to Fujimura Decl.). On June 4, 1996, the LEC denied Casumpang authorization to resume work as an electrical contractor. (Plaintiff's Ex. "N"); (Ex. "E" to Fujimura Decl.).

### 2. *1997 Investigation*

On June 12, 1997, Casumpang notified Local 142 of his election as the president of the Filipino Chamber of Commerce of Maui ("FCCM"). *See* Casumpang Decl. ¶ 7; Lapenia Decl. ¶ 3. Local 142 informed Casumpang in writing that his affiliation with FCCM must remain "strictly personal" and could not "precede [his] function as an employee" of the Union. (Ex. "B" to Lapenia Decl.). This exhortation notwithstanding, Casumpang used his Local 142 office telephone number as the contact information for donors interested in purchasing tickets to an upcoming FCCM fundraising dinner. (Ex. "F" to Fujimura Decl.); (Plaintiff's Ex. "R").

Suspicions aroused, Local 142 began another investigation of Casumpang on August 28, 1997. (Ex. "H" to Fujimura Decl.). The investigation continued through the end of the year, (Casumpang Decl. ¶ 10); (Fujimura Decl. ¶¶ 6, 7); (Exs. "I"-"N" to Fujimura Decl.), and found evidence that Casumpang had (1) worked as an electrical contractor without authorization; and (2) "improperly utilz[ed] the monies, property[ ] and resources of [Local 142] in violation of Rule # 14 of the Finan-

---

7. It is not clear why Local 142 became suspicious of Casumpang. Defendants presented evidence that during the sexual harassment investigation, Casumpang claimed to make more "money working as an electrical contractor" than as a full-time business agent with Local 142. (Girald Decl. ¶ 3). Casum-

pang contends that he was misquoted. (Casumpang Decl. ¶ 1).

8. The 1996 Stipulation was signed by Casumpang and his representative, Willy Kennison, another full-time business agent with Local 142. (Plaintiff's Ex. L).

cial Code ... while acting as president of the Filipino Chamber of Commerce of Maui ...." (Ex. "O" to Fujimura Decl.); (Plaintiff's Ex. "Y"). Thirteen Local 142 members presented this evidence in a formal charge against Casumpang on January 7, 1998. (Casumpang Decl. ¶ 12). The charging members referred the complaint to Local 142's Judicial Panel (the "Panel").[9]

Before the Panel convened, two significant procedural decisions were made. First, Lapenia, president of Local 142, ordered a special meeting of the LEB to ensure that an impartial body presided over the case. (Lapenia Decl. ¶ 4). At that meeting, certain sitting Panel members were removed for conflicts of interest. (Fujimura Decl. ¶ 10). The LEB then nominated and approved replacement members. *Id.* None of the charging parties served on the Panel. *Compare* Plaintiff's Ex. "Y" at 7 *with* Fujimura Decl. ¶ 10.

Second, the Panel reviewed whether amended article II, § 1 (ratified in December 1997)[10] or the prior version (discussed above and quoted at note 3) applied to Casumpang's case. (Machado Decl. ¶ 3). The Panel reasoned that the pre-amendment version was more appropriate because it was in effect when the allegedly unauthorized conduct occurred and governed the first proceeding against Casumpang. *See id.; compare* Ex. "B" to Fujimura Decl. *with* Ex. "P" to Fujimura Decl. at 3. Accordingly, the Panel evaluated the charges against Casumpang under the pre-amendment version of article II, § 1 and did not apply the amended provision to his case. (Machado Decl. ¶ 3); (Ex. "P" to Fujimura Decl. at 3); (Ex. "Q" to Fujimura Decl. at 3).

The Panel conducted a hearing on January 16, 1998, and issued its written Decision and Order the next day ("1998 Decision"). (Casumpang Decl. ¶¶ 12, 15);[11] (Machado decl. ¶ 4); (Fujimura Decl. ¶ 11). After receiving evidence,[12] the Panel unanimously found that Casumpang "knowingly and deliberately" violated the 1996 Stipulation and article II, § 1 on nine separate occasions.[13] (Machado Decl. ¶ 4); (Ex. "P" to Fujimura Decl. at 8). The Panel dis-

---

9. The charging parties requested a ten-year suspension and a fine equivalent to 11 months of Casumpang's salary as a full-time business agent. (Machado Decl. ¶ 6).

10. There is circumstantial evidence showing that the amendment to article II, § 1, although not applied to Casumpang, was directed at him. For example, the amendment specifically adds "business agent"—the position Casumpang held—to the list those Local 142 officials denied the right to engage in extra-union gainful employment. (Plaintiff's Ex. "I"). In addition, the stated intent of the amendment includes prohibiting "activities which are inconsistent with union duties, programs, and activities, such as being president of the Chamber of Commerce while serving as a union official." *Id.* Casumpang was, of course, president of the FCCM when the amendment was proposed. *See* Casumpang Decl. ¶ 7. The coincidence is difficult to overlook.

11. The Casumpang Decl. has two paragraphs numbered "12." The Court refers to the second of these paragraphs in the text accompanying this note.

12. The Panel received testimony from thirteen witnesses and admitted a number of exhibits, including Casumpang's exhibits marked "A" through "N." (Ex. "P" to Fujimura Decl. at 2).

13. The 1998 Decision refers at one point to a cease and desist order dated "April 16, 1997." As is apparent from the remainder of the 1998 Decision and Order and other evidence in the record, the document referenced is the 1996 Stipulation, dated April 16, 1996. *See* Ex. "P" to Fujimura Decl. at 7; Plaintiff's Ex. "L."

missed the second charge, however, after concluding that the evidence did not support conviction. (Ex. "P" to Fujimura Decl. at 8).

For violating the 1996 Stipulation and article II, § 1, the Panel suspended Plaintiff as a member in good standing for a period of nine consecutive years retroactive to June 14, 1996–the date of the first violation. (Ex. "P" to Fujimura Decl. at 9). While suspended as a member in good standing, Casumpang was declared ineligible to "serve as an officer of [Local 142] or as an officer or steward of any of the units of [Local 142]." *Id.* The Panel further ordered that Casumpang was to receive no compensation as a business agent with Local 142 after January 7, 1998, and must relinquish his office on January 19, 1998. *Id.* Finally, the Panel directed Casumpang to pay Local 142 a fine of $7,636 (the amount Casumpang admitted to improperly earning) within sixty days of the order.[14] *Id.*

Casumpang appealed the 1998 Decision to the LEB.[15] (Ex. "Q" to Fujimura Decl.).

Following a hearing, the LEB sustained the Panel's determination by written decision issued on March 19, 1998.[16] (Ex. "R" to Fujimura Decl.). The LEB found "clear and convincing evidence" that Casumpang violated the 1996 Stipulation and article II, § 1, and that the sentence imposed was "fair and reasonable." *Id.* at 3. Casumpang was advised to petition the Local 142 general membership for relief pursuant to article XXVII, § 10.5.[17] *Id.* at 4.

Casumpang instead appealed to McWilliams by letter dated April 18, 1998. (Ex. "W" to Fujimura Decl.). On July 1, 1998, McWilliams denied relief on the ground that Casumpang failed to follow the proper article XXVII, § 10.5 procedures. (Ex. "X" to Fujimura Decl. at 3, 4). That is, Casumpang did not first exhaust the local remedies available to him and, therefore, he was not entitled to petition the international union president for relief.[18] *Id.* at 4.

On August 25, 1998, Casumpang requested permission to file an appeal with

---

**14.** The 1998 Decision notified Casumpang of his article XXVII, § 10.5 rights. (Ex. "P" to Fujimura Decl. at 9). Casumpang was also informed that Rule 27 of the Financial Code required him to exhaust internal remedies before seeking recourse outside of the Union. *Id.*

**15.** Casumpang's appeal to the LEB was considered by eighteen members and signed by Frederico Galdones, Acting President. (Ex. "R" to Fujimura Decl. at 3, 4). In accord with the Constitution, these members were substituted for Lapenia and other titled officers, charging parties and members with possible conflicts of interest. (Lapenia Decl. ¶ 5); (Casumpang Decl. ¶ 22).

**16.** The LEB's Decision and Order affirming the 1998 Decision also relied upon the pre-amendment version of article II, section 1. (Ex. "R" to Fujimura Decl. at 2).

**17.** Article XXVII, § 10.5 provides:

After the decision is reached and recorded, the accused shall be called in and informed of the decision by the Chair of the [Panel]. If the accused is found guilty, the Chair of the [Panel] shall advise [him] of [his] rights of appeal[ ] to the [LEB,] to the Local [142] membership and to the International Union.

In an appeal to the Local [142] membership, the accused shall have the right to appear at each unit membership meeting for the purpose of pleading their case. The membership of each unit shall vote thereon, and the majority of the total membership's votes shall determine the result. (Ex. "S" to Fujimura Decl.).

**18.** McWilliams also noted that "[a] decision on the merits of Brother Casumpang's appeal would have resulted in it being denied as he failed to prove that there were procedural errors in the manner in which Local 142 handled the complaint against him." (Ex. "X" to Fujimura Decl. at 4 n.1).

the Local 142 membership. (Lapenia Decl. ¶ 6); (Casumpang Decl. ¶ 27). Lapenia informed Casumpang by letter dated September 4, 1998, that his appeal was untimely as the LEB's decision had already been submitted to the Local 142 membership pursuant to article VII, § 3. (Ex. "C" to Lapenia Decl. at 1–2).

### C. Ineligibility to Run for Office

The 1998 Decision revoked Casumpang's eligibility to serve "as an officer of [Local 142] or as an officer or steward of any of the units of [Local 142]" from June 14, 1996 through June 14, 2005. (Ex. "P" to Fujimura Decl. at 9). In accord with this ruling, Local 142 informed Casumpang that he was not a proper candidate for the re-run of the 1997 election.

## II. *Procedural History*

### A. Federal Complaint

Casumpang filed this action on September 23, 1998 and a First Amended Complaint on October 19, 1998. He alleged that Local 142 removed him as business agent and suspended his union membership in violation of federal law. Casumpang prayed for an order reinstating his Local 142 membership and returning him to his position as a business agent with the union.

Defendants filed a Motion to Dismiss Complaint ("Motion to Dismiss") on March 2, 1999. With the Motion to Dismiss pending, Casumpang filed a Second Amended Complaint. The Second Amended Complaint deleted the allegations that Defendants had improperly removed Casumpang from his elected position and alleged instead that Defendants deprived Casumpang "of his membership with Local 142, with all the privileges that accompanied such membership" in retaliation for certain criticisms he leveled at Local 142 officials. (Second Amended Complaint ¶¶ 31–32).

### B. Judgment

The Court held a hearing on Defendants' Motion to Dismiss on June 4, 1999. On June 24, the Court entered an Order granting the motion ("1999 Order"). The Court reasoned that Title IV of the LMRDA governed the case because Casumpang's claim revolved "around overturning [Local 142's] decision to suspend him as a member of good standing and effectively means reinstating his eligibility to hold union office." *Casumpang v. International Longshore & Warehouse Union, Local 142,* Civ. No. 98–00775 ACK, at 15 (D. Haw. filed June 24, 1999), *vacated* 269 F.3d 1042 (9th Cir.2001). Because Title IV actions are within the sole province of the Secretary of labor, the Court determined that it lacked subject matter jurisdiction over Casumpang's claims.[19] *See* 29 U.S.C. §§ 482(a)(1), 483 (1998).

As an alternative basis for dismissal, the Court concluded that Casumpang's did not properly exhaust internal Union procedures before resorting to litigation.[20] *Ca-*

---

**19.** Title IV provides in relevant part:

> A member of a labor organization—(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body ... may file a complaint with the Secretary [of Labor] within one calendar month thereafter alleg-

ing the violation of any provision of section 481 of this title.

> \* \* \* \* \* \*

> The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.

29 U.S.C. §§ 482(a)(1), 483.

**20.** Title I provides in relevant part:

*sumpang,* Civ. No. 98–00775 ACK, at 21, 24. Casumpang argued that the failure to exhaust notwithstanding, his case should proceed because further internal appeals would have proved futile. *Id.* at 23. The Court acknowledged its discretion under Title I of the LMRDA to waive the exhaustion requirement, but concluded that Casumpang would have received fair internal review and, therefore, discretion was best exercised by denying the claim as untimely. *See id.* at 23–25.

## C. Appeal and Decision

Casumpang noticed an appeal on July 19, 1999. The issues before the panel were (1) whether the district court had subject matter jurisdiction; and (2) whether, on the facts plead, Casumpang's failure to exhaust internal union remedies was excusable. *Casumpang v. International Longshoremen's & Warehousemen's Union, Local 142,* 269 F.3d 1042, 1054, 1061 (9th Cir.2001). The case was submitted on March 9, 2001, and on October 23, 2001,

the Ninth Circuit issued its opinion vacating the order of dismissal and remanding with instructions.

With respect to the first issue, the panel held that this Court "erred in concluding that it lacked subject matter jurisdiction over the Title I claim set forth in" the Second Amended Complaint. *Id.* at 1063. The Ninth Circuit reasoned:

> Casumpang did not directly challenge the validity of the 1998 re-run election. Instead, he sought a declaration that his Title I rights as a union member had been violated and a restoration of his privileges as a member in good standing .... Under these circumstances, Title IV does not bar an election-related tort claim filed pursuant to Title I.[21]

*Id.*

With respect to this Court's alternative basis for dismissal, the panel held:

> The district court abused its discretion in dismissing this action with prejudice .... Upon remand, the district court is

---

Every member of a labor organization shall have equal rights and privileges within such organization ....

Every member of any labor organization shall have the right ... to express any views, arguments, or opinions ...: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

No labor organization shall limit the right of any member thereof to institute an action in any court ...: *Provided,* That such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal ... proceedings against such organizations or any officer thereof ....

29 U.S.C. §§ 411(a)(1), 411(a)(2), 411(a)(4) (1998).

**21.** This Court found that reinstatement of Casumpang as a member in good standing would have had the practical and ultimate effect of overturning the re-run election (because Casumpang having lost his status as a member in good standing had not been permitted to participate as a candidate) and, therefore, his claims properly fell within Title IV. *Casumpang,* Civ. No. 98–00775 ACK, at 15. The panel disagreed, however, and concluded that Casumpang had not "directly" challenged the results of a past election. Remarkably, the panel's conclusion was based, at least in part, on its independent finding that the term for the office of Maui Division Director expired in 2000—prior to oral argument before the panel—thereby mooting the election issue. *See Casumpang,* 269 F.3d at 1058 n. 8. Casumpang brought this action in 1999, however—well before the term for the office Casumpang hoped to ascend to had lapsed. So, too, this Court heard Defendants' Motion to Dismiss (the subject of the appeal to the panel) long before the term for the office expired.

instructed to determine whether the internal grievance procedures maintained by Local 142 meet the requirements laid out in [*Clayton v. International union, United Auto., Aero. & Agric. Implement Workers*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) ]. Should the district court determine that the *Clayton* requirements are met, it may dismiss Casumpang's claim without prejudice and require Casumpang to pursue internal union remedies for a period of time not to exceed four months. Should the district court instead determine that the grievance procedures maintained by Local 142 do not satisfy the standards articulated in *Clayton*, it may not compel Casumpang to exhaust union remedies as a prerequisite to entertaining his suit under Title I.[22]

*Id.*

### C. Remand

Defendants answered the Second Amended Complaint on July 11, 2002. Casumpang was afforded an opportunity for discovery, the deadline for which passed on April 4, 2003. Defendants' MSJ has been fully briefed and a hearing was held on May 5, 2003.

In support of their MSJ, Defendants argue (1) that Casumpang impermissibly failed to exhaust union remedies; and (2) that Casumpang's Title I claim fails as a matter of law. Casumpang counters (1) that the Ninth Circuit "has already ruled that issues of fact remain for trial"; (2) that Local 142's internal grievance procedures fail under *Clayton*; and (3) that issues of fact remain regarding Casumpang's Title I claim.

### STANDARD OF REVIEW

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

---

**22.** Before *Casumpang*, whether to require exhaustion under § 411(a)(4) was left to the district court's "sound" discretion. *See Kofoed v. International Bro. of Elec. Workers*, 237 F.3d 1001, 1006 (9th Cir.2001); *Stevens v. Northwest Indiana Dist. Council*, 20 F.3d 720, 731 n. 28 (7th Cir.1994); *Scoggins v. Boeing Co., Inc.*, 742 F.2d 1225, 1229 (9th Cir.1984).

Notably in *Scoggins* the Ninth Circuit found that the union had submitted an affidavit and excerpts from its constitution to demonstrate "adequate" internal union remedies were available, and consequently the burden then shifted to the union member to show exhaustion of remedies would have been futile and the district court need only address the *Clayton* factors argued by the union member. The Ninth Circuit concluded that since the union member in that case had failed to raise the second *Clayton* factor pertaining to ability to reactivate the grievance, such failure could not be rectified upon appeal. *Id.* at 1229–30. Likewise, in the instant case, the union submitted affidavits and excerpts from its consti-

tution and records to demonstrate internal union remedies were available; and this Court addressed the *Clayton* factors argued by Plaintiff Casumpang (although he failed to argue all of the factors). However, the *Casumpang* panel now requires the District Court to explicitly address all *Clayton* factors, whether or not argued by the union member. Furthermore, *Clayton* plainly provides that if any one of the relevant factors (discussed below) is not met, "the court *may* properly excuse the employee's failure to exhaust." 451 U.S. at 689, 101 S.Ct. 2088 (emphasis added). Accordingly, where one of the *Clayton* factors has not been satisfied, the district court may excuse the claimant's failure to exhaust, or the Court—in its discretion—may take other appropriate action. *See id.* After *Casumpang*, however, the failure of a *Clayton* factor largely divests the court of the discretion to do anything but allow the action to proceed. *See* 269 F.3d at 1062. This circumscribes much of the authority that district courts previously enjoyed under § 411(a)(4).

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[23] Fed. R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[24] *Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n*, 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523 (9th Cir.1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by " 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). So, too, the Court's role is not to make credibility assessments.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.*, 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence tending to support the complaint." *T.W. Elec. Serv.*, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

### I. *Law of the Case*

 The law of the case doctrine, an imminently practical rule, "is designed to aid in the efficient operation of court af-

---

**23.** Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

**24.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir.1986).

fairs." *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990). For that reason, "reconsideration of questions previously decided" is improper. *United States v. Mills*, 810 F.2d 907, 909 (9th Cir.1987). The law of the case applies when an issue on remand was "decided explicitly or by necessary implication" in the appellate court's previous disposition. *Liberty Mut. Ins. Co. v. Equal Employment Opportunity Comm'n*, 691 F.2d 438, 441 (9th Cir.1982). But district courts are necessarily "free to decided issues" not otherwise resolved on a prior appeal. *Id.*

■ Casumpang argues that the law of the case constrains this court because the "Ninth Circuit ruled that there was enough circumstantial evidence [concerning Casumpang's retaliation claim] to defeat Defendants' [MSJ]." (Plaintiff's Opp. at 3). Casumpang mistakes the nature of the prior appeal. The Ninth Circuit had before it an order dismissing Casumpang's case with prejudice on jurisdictional grounds, not a summary judgment adjudication. *Casumpang*, 269 F.3d at 1045; *Casumpang*, Civ. No. 98–00775 ACK, at 25; (Plaintiff's Opp. at 4). The panel thus had no occasion to consider the sufficiency of the evidence supporting an entirely separate issue under an inapposite standard. *See Milgard*, 902 F.2d at 715–16.

Nor did the Ninth Circuit purport to make the determination Casumpang claims. The panel plainly instructed this Court upon remand to:

[D]etermine whether the internal grievance procedures maintained by Local 142 meet the requirements laid out in *Clayton*. Should the district court determine that the *Clayton* requirements are met, *it may dismiss Casumpang's claim without prejudice and require Casumpang to pursue internal union remedies* for a period of time not to exceed four months.

*Id.* at 1063 (emphasis added). As is apparent from the quoted text, the remand instructions contemplated that Casumpang's case might yet be resolved by internal Union procedures. *See id.* This ruling is meaningless if the appellate decision is interpreted as directing this Court to proceed to trial on the merits of the claims.

■ In an effort to rebut the obvious, Casumpang cites selectively from the appellate opinion. (Plaintiff's Opp. at 6). But placed in context, these quotations address only the panel's reasons for overruling this Court's conclusion that it lacked jurisdiction. *See Casumpang*, 269 F.3d at 1058–60; *see also McKenzie v. BellSouth Telecom., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000); *cf. Milgard*, 902 F.2d at 715–16. In any event, the panel did not have the benefit of discovery in this case, *Casumpang*, 269 F.3d at 1060, and an appellate ruling "on a motion to dismiss does not establish the law of the case for purposes of summary judgment[ ] when the complaint has been supplemented by discovery." [25] *McKenzie*, 219 F.3d at 513.

---

25. The Court notes, however, that the panel observed:

There is sufficient circumstantial evidence in the record ... to support an inference that the ostensible basis for the suspension articulated by [Local 142] was a mere pretext to mask retaliatory intent to punish

Casumpang for the expression of his views as a union member.

 * * * * * *

[T]he record contains evidence that raises a disputed question of fact regarding whether [Local 142] amended its constitution within three months of Casumpang's criticism of the ... leadership to facilitate the suspen-

In sum, the issue of whether Casumpang demonstrated facts sufficient to proceed to trial was neither explicitly decided by the panel nor resolved by necessity. *See Liberty Mut.,* 691 F.2d at 441. Casumpang's law of the case argument is therefore without merit.

## II. *Exhaustion*

Title I of the LMRDA is something of a "bill of rights" for union members. *E.g., Zamora v. Local 11, Hotel Employees & Rest. Employees Int'l Union,* 817 F.2d 566, 569 (9th Cir.1987). Under the relevant provisions, union members have the right to "express any views, arguments, or opinions; and to express at meetings of the labor organizations [their] views, upon candidates in an election of the labor organization or upon any business properly before the meeting ...." 29 U.S.C. § 411(a)(2).

■ Section 411(a)(2) is intended "to promote union democracy" and recognizes that "democracy [will] be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." *United Steelworkers v. Sadlowski,* 457 U.S. 102, 112, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982). The speech protected under Title I therefore includes criticism of union leadership, *Gilvin v. Fire,* 259 F.3d 749, 759 (D.C.Cir.2001),

questions as to the wisdom of proposed union measures, *Lynn,* 804 F.2d at 1478–79, and discussion of general union affairs with other members. *DeCarlo v. Salamone,* 977 F.Supp. 617, 622–23 (W.D.N.Y. 1997); *Pearl v. Tarantola,* 361 F.Supp. 288, 293 (S.D.N.Y.1973).

■ Unions, of course, have the right to temper member speech by reasonable rules regarding "the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." [26] 29 U.S.C. § 411(a)(2). The "application of otherwise reasonable rules," however, "constitute[s] a § 411(a)(2) violation when exercised in a retaliatory manner with regard to member ... speech." *Dolan v. Transport Workers Union of America,* 746 F.2d 733, 744 (11th Cir.1984); *accord Casumpang,* 269 F.3d at 1063.

Accordingly, aggrieved members have a federal cause of action to vindicate their Title I rights, 29 U.S.C. § 412,[27] but "any such member may be required to exhaust reasonable hearing procedures ( ... not to exceed a four-month lapse of time) within such organization, before instituting a legal or administrative proceeding against such organization or any officer thereof ...." 29 U.S.C. § 411(a)(4). The language of § 411(a)(4) being permissive, the Court

---

sion of Casumpang's membership in good standing.

\* \* \* \* \* \*

The proximity in time between the suspension of Casumpang's membership in good standing and the expression of his views at the union's convention in September[] 1997, combined with the December 12, 1997 amendment to [Local 142's] constitution, were sufficient to raise a rebuttal presumption of retaliation.

*Casumpang,* 269 F.3d at 1059–60. Although the quoted text has no relevance for law of the case purposes, it does indicate the panel's concern that there may be material issues of

fact that could survive the subsequent discovery.

**26.** Casumpang does not argue that article II, § 1 is an unreasonable rule.

**27.** Section 412 provides:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief as may be appropriate.

29 U.S.C. § 412 (1998).

has "broad discretion to require, or not to require, exhaustion [of internal union procedures] depending on the reasonableness of such requirement in light of the facts of each case." *Casumpang,* 269 F.3d at 1062; *see also Clayton,* 451 U.S. at 689, 101 S.Ct. 2088.

█ In determining whether to require exhaustion, the Court is to consider:

[F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks ...; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of the claim.

*Clayton,* 451 U.S. at 689, 101 S.Ct. 2088. "If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust." *Id.* The moving party has the burden to establish the ade-

quacy of internal union remedies. *Casumpang,* 269 F.3d at 1062.

## A. Internal Remedies

Under the Constitution, parties may challenge an LEB decision by appeal to the local membership.[28] (Lapenia Decl. ¶ 14); (Ex. "S" to Fujimura Decl.); (Ex. "X" to Fujimura Decl. at 3, 4); (Lapenia Decl. ¶¶ 6, 7); (Ex. "C" to Lapenia Decl. at 1). The 1998 Decision advised Casumpang of his article XXVII, § 10.5 rights, (Ex. "P" to Fujimura Decl. at 9), and the LEB specifically instructed the parties "to file a timely appeal with the 'Local [142] membership' in the event [that] they disagree with this Decision and Order." (Ex. "R" to Fujimura Decl. at 4). There is, therefore, little question as to Local 142's internal review procedures or Casumpang's knowledge of the same.

Casumpang ignored this remedy, however, until better than five months passed. (Lapenia Decl. ¶ 6); (Casumpang Decl. ¶ 27). By then, the LEB's decision had already been submitted to the membership and, consequently, Lapenia denied Casum-

---

**28.** Casumpang avers that a 1997 amendment to the Constitution eliminated the local membership as part of the appeal process. (Casumpang Decl. ¶ 23). Defendants raise several persuasive objections to ¶ 23 of the Casumpang Decl. (Defendants' Objections to Evidence Submitted by Plaintiff, filed April 24, 2003, at 19 ("Defendants' Evid. Obj.")). Affidavits submitted in opposition to summary judgment must set forth specific, admissible facts based on the affiant's personal knowledge. Fed.R.Civ.P. 56(e). After reviewing Casumpang's Decl. and its supporting exhibits, the Court finds that ¶ 23 is conclusory and lacks a discernable factual basis. Paragraphs 23 is, therefore, of little evidentiary value.

In any event, it is undisputed that the amendment in question was to article XXVII, § 13, not to § 10.5, and provides:

Any accused wishing to appeal the action of the [Panel] must do so in writing within fifteen (15) days after being notified by the

Chair of the [Panel]. The appeal must be in writing and shall be made to the [LEB]. The decision of the [LEB] shall be final.

(Ex. "S" to Fujimura Decl.). As is plain from Plaintiff's Ex. "H1," the amendment was intended "[t]o establish a uniform process of handling all charges against officers and members through" the Panel. *Id.* Accordingly, the amendment eliminated "local and division trial committees and consolidat[ed] them into one [Panel] to hear and consider all charges against officers and member ...." *Id.* There is no evidence that the drafters intended the amendment to eliminate appeals to the Local 142 members. Furthermore, such a construction does not square with § 10.5, (Ex. "S" to Fujimura Decl.), the LEB's March 1998 Decision, (Ex. "R" to Fujimura Decl. at 4), or McWilliams' July 1, 1998 ruling. (Ex. "X" to Fujimura Decl. at 3, 4). Casumpang has thus raised nothing beyond "metaphysical doubt" regarding the internal union appeal procedures.

pang's petition as untimely. (Lapenia Decl. ¶ 6). Defendants argue that Casumpang's failure to complete formal internal review process bars his federal claim. (Defendant's MSJ at 20). Casumpang contends that his failure to exhaust is excusable under *Clayton.* (Plaintiff's Opp. at 11).

### B. Fair Hearing

■ The record establishes that Local 142 afforded Casumpang a full and fair hearing on the charges against him. *See* Machado Decl. ¶¶ 2–4, 6, 7; Casumpang Decl. ¶ 22; Lapenia Decl. ¶¶ 4, 5; Fujimura Decl. ¶¶ 10, 13, 14; Girald Decl. ¶¶ 7, 9; Ex. "P" to Fujimura Decl. at 2, 9; Ex. "R" to Fujimura Decl. at 2, 4; Ex. "X" to Fujimura Decl. at 4 n.1. Casumpang has presented no evidence to the contrary. *Cf. Clayton,* 451 U.S. at 689–90, 101 S.Ct. 2088. Nor is there reason to conclude that further review of Casumpang's claim would have been treated with any less care. *Cf. Stevens,* 20 F.3d at 733.

In any event, the next phase in Local 142's internal review procedure was an appeal to the membership, not to the officers. (Fujimura Decl. ¶ 14); (Ex. "R" to Fujimura Decl. at 4); (Ex. "S" to Fujimura Decl.); (Lapenia Decl. ¶ 7); (Ex. "C" to Lapenia Decl. at 1). The case would thus have been decided democratically by ordinary Local 142 members. (Lapenia Decl. ¶ 7); (Ex. "S" to Fujimura Decl.). For that reason, officer hostility—even if it existed—could not have plausibly precluded further meaning review. *See Scoggins,* 742 F.2d at 1229 n. 6; *Komives v. General Motors Corp.,* No. G 81–820, 1984 U.S. Dist. Lexis 17438, *16 (W.D. Mich. April 19, 1984); *cf. Arnold v. United Mine Workers of America,* 293 F.3d 977, 981 (7th Cir.2002).

### C. Adequacy of Internal Union Remedies

The Local 142 membership had the power to reinstate Casumpang as a member in good standing and overturn the fine assessed against him. (Lapenia Decl. ¶ 7). And if the membership had voted to reverse the 1998 Decision, Casumpang was entitled to petition the LEB for back-pay and other economic damages suffered.[29] *Id.* Local 142's internal procedures were therefore capable of awarding Casumpang " 'the full relief he seeks,' namely reinstatement as a member in good standing and money damages for [Local 142's] alleged violation of his rights under Title I." [30] *See Casumpang,* at 1062 (quoting *Clayton,* 451 U.S. at 689, 101 S.Ct. 2088).

---

**29.** In addition to compensatory damages, the Second Amended Complaint prays for punitive damages and attorneys' fees and costs. (Second Amended Complaint at 10). Even assuming such relief is appropriate here and is unavailable through internal review, Casumpang's failure to exhaust remains inexcusable. An award of attorneys' fees and punitive damages is necessarily predicated upon a judicial determination that Local 142 violated Casumpang's § 411(a)(2) rights. *See* 29 U.S.C. § 412. If Local 142's membership had voted to reinstate Casumpang, there would have been no violation of § 411(a)(2), *cf. Sheet Metal Workers' Int'l Ass'n v. Lynn,* 488 U.S. 347, 350, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) and, therefore, no basis for awarding punitive damages or expenses incurred in liti-

gation. Accordingly, the Local 142 membership was capable of affording the full relief Casumpang requested or was entitled to before filing this action. In any event, allowing an aggrieved union member to circumvent the exhaustion requirement simply by claiming punitive damages undermines the purpose of § 411(a)(4) and renders the provision essentially nugatory. The Court will not read the exhaustion requirement out of Title I.

**30.** Casumpang argues that an appeal to the Local 142 membership is inadequate because "nothing in the record demonstrates that the 'internal union appeals procedures' maintained by Local 142 will permit Casumpang 'to reactivate his grievance.' " (Plaintiff's

Defendants aver that Casumpang may yet appeal to membership for relief. (Lapenia Decl. ¶ 7). This was confirmed by defense counsel at the May 5, 2003 hearing. Casumpang has presented no evidence to the contrary. Accordingly, the Court finds that an appeal to the Local 142 membership remains available to Casumpang.

### D. Undue Delay

Title I provides that aggrieved union members cannot be required to spend more than four months exhausting internal procedures. 29 U.S.C. § 411(a)(4). The Panel issued its 1998 decision on January 17, 1998. (Machado Decl. ¶ 4). Local 142 thus had four months from that date—or until May 17, 1998—to complete its internal review procedures before § 411(a)(4) freed Casumpang to file a federal lawsuit. *See* 29 U.S.C. § 411(a)(4).

The LEB denied Casumpang's appeal on March 19, 1998, (Fujimura Decl. ¶ 14), and advised Casumpang that his next step was to petition the membership for relief. (Ex. "R" to Fujimura Decl. at 4). Casumpang could have asked for a membership vote at the next monthly meeting, (Fujimura Decl. ¶ 15), which, by necessity, would have occurred within thirty-one days of March 19. Because the procedure could have been completed well within the four-month timetable imposed by § 411(a)(4), exhaustion of Local 142's internal procedures would not have unduly delayed Casumpang's opportunity to obtain a judicial hearing on the merits of his claim.

Nor will further Union review unreasonably delay this action. As discussed, Casumpang cannot be required to follow union grievance procedures for more than four months. Defendants aver that an appeal to the membership at this time can be completed within that period, and Casumpang presented nothing to dispute that fact.

### E. Summary

The Ninth Circuit instructed this Court to "determine whether the internal grievance procedures maintained by Local 142 meet the requirements laid out in *Clayton.*" *Casumpang,* 269 F.3d at 1063. The Court finds (1) that union officials were not so hostile that Casumpang could not have

---

Opp. at 11) (quoting *Clayton,* 451 U.S. at 689, 101 S.Ct. 2088). Casumpang mistakes the inquiry. The second *Clayton* factor asks "whether the internal union appeals procedures would be inadequate *either* to reactivate the employee's grievance *or* to award him the full relief he seeks ...." *Clayton,* 451 U.S. at 689, 101 S.Ct. 2088 (emphasis added). Accordingly:

> Where internal union appeals procedures can result in *either* complete relief to an aggrieved employee *or* reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum.
>
> \* \* \* \* \* \*
>
> By contrast, where an aggrieved employee cannot obtain *either* the substantive relief he seeks *or* reactivation of his grievance, national labor policy would not be served by requiring exhaustion of internal remedies.

*Id.* at 692–93, 101 S.Ct. 2088 (emphasis added). The test is plainly disjunctive and, therefore, if internal remedies provide the relief sought, it is immaterial whether the grievance may be reactivated. *Komives,* 1984 U.S. Dist. Lexis 17438, \*17; *see also Clayton,* 451 U.S. at 689–93, 101 S.Ct. 2088; *Scoggins,* 742 F.2d at 1230.

hoped to obtain a fair hearing on his claim and, moreover, the procedure available to Casumpang was an appeal to the general Local 142 membership, not to the officers; (2) that the internal union appeals procedures were adequate; and (3) that exhaustion of internal procedures would not have unreasonably delayed a judicial determination. For those reasons, Casumpang inexcusably failed to exhaust Local 142's internal review procedures before filing this action.

In accord with the prior appellate decision, the Court dismisses the Second Amended Complaint without prejudice and directs Casumpang to follow the appropriate Local 142 review procedures for a period not to exceed four months from the date of this Order.[31] If Casumpang does not receive adequate relief, he may refile this action at the end of four months or when he has fully exhausted Union remedies, whichever occurs first.

### CONCLUSION

Plaintiff's Second Amended Complaint is DISMISSED without prejudice.

IT IS SO ORDERED.

---

**31.** Whether under these circumstances the remand instructions contained in the prior appellate opinion mandate this result or not, see *Casumpang*, 269 F.3d at 1063, this Court's discretionary judgment leads it to conclude that dismissal without prejudice is the appropriate result.