Nicanor E. CASUMPANG, Jr. Plaintiff,

v.

INTERNATIONAL LONGSHORE & WAREHOUSE UNION, LOCAL 142, et al. Defendants.

No. CIV. 98–00775ACKKSC.

United States District Court, D. Hawai'i.

March 10, 2005.

Jerry P.S. Chang, Shawn A. Luiz, Honolulu, HI, for Nicanor E. Casumpang, Jr., plaintiff.

Fred H. Altshuler, Daniel T. Purtell, Laura P. Juran, Altshuler Berzon Nussbaum, Berzon & Rubin, San Francisco, CA, Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos, Takahashi Masui Vasconcellos & Covert, Honolulu, HI, for John Does 1–10, International Longshore & Warehouse Union, Local 142, Eusebio Lapenia, Jr., defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND[1]

Plaintiff Nicanor Casumpang, Jr. ("Casumpang" or "Plaintiff") filed the Complaint in this action on September 23, 1998, subsequently amended on October 19, 1998 and June 4, 1999, alleging that Defendants International Longshore & Warehouse Union, Local 142 ("Local 142" or "Union") and Eusebio Lapenia, Jr. ("Lapenia") (collectively "Defendants") removed Plaintiff in January of 1998 from his elected position as a Business Agent and suspended his membership with Local 142 in retaliation for his exercise of free-speech activity in violation of 29 U.S.C. § 411 (i.e. "Title I" of the Labor–Management Reporting and Disclosure Act ("LMRDA")). Plaintiff generally posits that he was removed and suspended in retaliation for criticizing Local 142 leadership, particularly Lapenia, regarding decisions and the handling of various matters (e.g., Monarch Building Supply settlement, negotiations with various hotels, creation of health and welfare fund)[2] beginning in 1995 and continuing through the Union Convention held in September of 1997 ("1997 Convention").

On March 2, 1999, Defendants filed a Motion to Dismiss for lack subject matter jurisdiction. By Order of June 24, 1999, the Court granted Defendants' Motion to Dismiss ("1999 Order"). The Court held that Title IV (not Title I) of the LMRDA applied such that the Secretary of Labor had exclusive jurisdiction of the dispute and alternatively, that Plaintiff failed to exhaust internal union procedures in a timely fashion. See 1999 Order at 13, 21.

On July 19, 1999, Plaintiff appealed the 1999 Order to the Ninth Circuit. In an opinion filed on October 23, 2001 ("Ninth Circuit's Opinion"), the Ninth Circuit reversed, concluding, in summary, that Title IV of the LMRDA did not deprive the Court of subject matter jurisdiction over Plaintiff's Title I claim, that genuine issues of material fact existed with respect to the Court's subject matter jurisdiction under Title I, and that the Court erred by failing to employ the considerations articulated by the Supreme Court in *Clayton v. Int'l Union, United Auto., Aerospace & Agric.*

---

1. The facts of this dispute have been discussed in detail on numerous occasions, including without limitation, the Ninth Circuit's published opinion reported at *Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Local 142*, 269 F.3d 1042 (9th Cir.2001), and the Court's Order Dismissing Plaintiff's Complaint reported at 297 F.Supp.2d 1238 (D.Haw.2003), and will not be repeated herein unless disputed by the parties or otherwise significant for purposes of the instant Motion for Summary Judgment.

2. *See Casumpang*, 269 F.3d at 1047.

*Implement Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), in determining whether Plaintiff was required to exhaust internal union remedies prior to filing this lawsuit. *See Casumpang,* 269 F.3d at 1058, 1062.

With respect to the Court's subject matter jurisdiction of Plaintiff's Title I Freedom of Speech claim, the Ninth Circuit first set forth the three elements of a cause of action under Section 101(a)(2): "(1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) the retaliatory action was 'a direct result of his or her decision to express disagreement' with the union's leadership." *Id.* at 1058 (citation omitted). It had little trouble concluding that the first two elements were satisfied given that (1) "Casumpang alleged facts in his second amended complaint showing that he had criticized the Local's leadership at union meetings beginning in 1995 and at the union convention in September 1997" without contest by Local 142 and (2) "[w]ithin three months following Casumpang's protected activity at the union convention," Local 142, among other things, set aside Casumpang's election to the position of Maui Division Director, began investigating and found him guilty of working as an electrical contractor in violation of Article II, Section 1 of the Union Constitution ("Article II, Section 1"), and suspended his good member standing for a period of nine years. *Id.* at 1058.

The third element regarding causation, however, warranted more extensive analysis. Borrowing from the "related field of retaliatory actions by employers under Title VII of the Civil Rights Act of 1964[,]" the Ninth Circuit noted that "a causal link between protective activities and an adverse employment action 'may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity of time between the protected action and the allegedly retaliatory employment decision.'" *Id.* at 1059 (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)). The Ninth Circuit concluded that despite the lack of direct evidence, there was "sufficient circumstantial evidence in the record, however, to support an inference that the ostensible basis for the suspension articulated by the Local was a mere pretext to mask its retaliatory intent to punish Casumpang for the expression of his views as a union member." *Id.* Identified as a disputed question of fact was "whether the Local amended its constitution within three months of Casumpang's criticism of the Local leadership to facilitate the suspension of Casumpang's membership in good standing." *Id.* at 1059–60. Further, the Ninth Circuit reasoned that the "circumstantial evidence of the temporal proximity between Casumpang's criticism of the leaders of Local 142 and the Local's amendment to its constitution was amply corroborated by other actions taken against Casumpang[,]" for example, invalidation of his election as business agent and suspension of his status as a member in good standing shortly after he made his critical comments at the 1997 convention. *Id.* at 1060. In summary, the Ninth Circuit held that "[t]he proximity in time between the suspension of Casumpang's membership in good standing and the expression of his views at the union's convention in September, 1997, combined with the December 12, 1997 amendment to the Local's constitution, were sufficient to raise a rebuttable presumption of retaliation." *Id.*

Subsequently, on remand to this Court, Defendants moved for summary judgment on March 20, 2003 ("First MSJ"). There, Defendants argued that Plaintiff failed to exhaust internal union remedies and that summary judgment on the merits was warranted on Plaintiff's Title I claim because

(1) Plaintiff could not establish his prima facie case, (2) there was overwhelming evidence that the Union had a legitimate, non-retaliatory reason for suspending Plaintiff's membership, and (3) there was no evidence that the Union's reason was pretextual. On April 17, 2003, Plaintiff filed an Opposition to Defendants' First MSJ. In response to Defendants' assertions, Plaintiff argued that the "law of the case" doctrine precluded summary judgment in Defendants' favor per the Ninth Circuit's conclusion that issues of fact remain and that he had met the requirements of *Clayton* such that he should be allowed to proceed to trial without being first required to exhaust the Union's internal grievance procedures.

By Order of May 21, 2003, the Court dismissed the Second Amended Complaint without prejudice and directed Plaintiff to follow the appropriate Local 142 review procedures for a period not to exceed four months ("2003 Order"). *See Casumpang,* 297 F.Supp.2d at 1254. The Court concluded, among other things, that Plaintiff's law of the case argument lacked merit because the "issue of whether Casumpang demonstrated facts sufficient to proceed to trial was neither explicitly decided by the panel nor resolved by necessity." *Id.* at 1250 (citing *Liberty Mut. Ins. Co. v. Equal Employment Opportunity Comm'n,* 691 F.2d 438, 441 (9th Cir.1982)). Without deciding whether summary judgment was appropriate on the merits,[3] the Court turned to the exhaustion issue, and as instructed by the Ninth Circuit, employed the considerations set forth in *Clayton. See id.* at 1250–53. The Court found that Plaintiff inexcusably failed to exhaust Local 142's internal review procedures before filing the action. *See id.* at 1253.

Plaintiff subsequently sought review of the 2003 Order by the Ninth Circuit. This appeal, however, was voluntarily dismissed as moot on March 1, 2004. Soon thereafter, on March 16, 2004, Plaintiff filed a Third Amended Complaint at which time the Court re-opened the case. The Third Amended Complaint contains an additional allegation that "Defendants manipulated in their favor the voting process conducted by them in August 2003 with regard to the court-ordered membership appeal." Third Am. Compl. ¶ 35.

Defendants filed the instant Motion for Summary Judgment on October 8, 2004 (the "Motion"). The Motion repeats nearly verbatim arguments challenging Plaintiff's Title I claim on the merits asserted in Defendants' First MSJ. Defendants again argue that Plaintiff has not established a prima facie case, that there is conclusive evidence the Union had a legitimate, non-retaliatory reason for disciplining Plaintiff, and there is no evidence that the Union's reason was pretextual. In support of the Motion, Defendants have submitted a Separate and Concise · Statement of Material Facts, filed October 8, 2004 ("Def.'s CSF"), "Defendants' Submittal, in Support of Their Motion For Summary Judgment filed on October 8, 2004, of Prior Declarations with the Court," filed on October 8, 2004 ("Submittal"), and the Corrected Supplemental Declaration of Guy Fujimura, filed on October 21, 2004 ("Fujimura Supp. Decl.").

On November 24, 2004, Plaintiff filed an Opposition to the Motion (the "Opposition"). The Opposition repeats nearly verbatim arguments proffered by Plaintiff in rebuttal to Defendant's First MSJ. Again, Plaintiff contends that the Ninth Circuit's ruling that issues of fact remain for trial

---

3. The Court noted, however, that certain portions of the Ninth Circuit's Opinion indicated "the panel's concern that there may be material issues of fact that could survive the subsequent discovery." *Casumpang,* 297 F.Supp.2d at 1249, n. 25.

constitutes law of the case precluding summary judgment in Defendants' ·favor. In support of the· Opposition, Plaintiff has submitted a Separate and Concise Counter–Statement of Facts ("Plt.'s CSF"), Declaration of Shawn Luiz ("Luiz Decl."), Declaration of Nicanor E. Casumpang, Jr. ("Plt.'s Decl."), and the Supplemental Declaration of Plaintiff Nicanor E. Casumpang, Jr. ("Plt.'s Supp. Decl."), all filed on November 24, 2004.

Defendants filed a Reply on December 2, 2004, attaching their "Objections to Evidence Submitted by Plaintiff" ("Defs' Objections").[4] Defendants contend that the Court has already correctly held that the law of the case doctrine does not apply to the Motion. They also reiterate their arguments regarding the merits of Plaintiff's Title I claim and assert general and specific objections to evidence proffered by Plaintiff in opposition to the Motion. On March 7, 2005, the Court heard oral argument on the Motion.

### STANDARD OF REVIEW

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled

to judgment as a matter of law."[5] Fed. R.Civ.P. 56(c).

■ "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[6] *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir.1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). So, too, the Court's role is not to make credibility assessments.

---

**4.** The Court will consider and rule on Defendants' objections only to the extent that such objections apply to evidence actually relied on by the Court in deciding the Motion.

**5.** Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence that a court may consider

when determining whether a material issue of fact exists. Fed.R.Civ.P. 56(e).

**6.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505.

 Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. 322–323, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.*, 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence" in support. *T.W. Elec. Serv.*, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[7] *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## DISCUSSION

### I. LAW OF THE CASE DOCTRINE

 Plaintiff argues that the law of the case doctrine precludes summary judg-

ment in this case. Plaintiff's current law of the case argument mimics the one he previously proffered and that the Court rejected for reasons stated in the 2003 Order. There, the Court carefully considered the parties' arguments, the relevant standards and the facts and found that "the issue of whether Casumpang demonstrated facts sufficient to proceed to trial was neither explicitly decided by the panel nor resolved by necessity." *Casumpang*, 297 F.Supp.2d at 1250. Plaintiff provides the Court with no new argument or reason to justify deviation from these conclusions.

 Alternatively, even if the law of the case doctrine is applicable here, though it is not, the Court finds merit in Defendants' contention that the full post-discovery record may warrant re-evaluation of some of the findings set forth in the Ninth Circuit's Opinion in light of additional evidence. It is well-settled that "[a]pplication of the [law of the case] doctrine is discretionary." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir.1990) (citing *United States v. Mills*, 810 F.2d 907, 909 (9th Cir.1987)). "A court properly exercises its discretion to reconsider an issue previously decided … [where] the evidence on remand was substantially different." *Id.* Thus, the Court will consider, based on the evidence presented in connection with the Motion as applied to the relevant legal principles set forth by the Ninth Circuit, whether genuine issues of fact remain for trial.

---

7. When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment." *UA Local 343 of the United Ass'n of Journeymen v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence

cognizable under that rule." *Id.* (quoting Fed.R.Civ.P. 56(e)); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2727 (3d ed. 1998). The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000); *accord Dye v. United States*, 121 F.3d 1399, 1409 (10th Cir. 1997).

## II. RETALIATION UNDER THE LMRDA

### A. *Prima Facie Case*

■ Section 101(a)(2) of the LMRDA requires the Plaintiff to allege facts showing "(1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) retaliatory action was a 'direct result of his or her decision to express disagreement' with the union's leadership." *Casumpang*, 269 F.3d at 1058. While Defendants prudently concede that Plaintiff suffered an adverse action(s), they contest the first and third elements of the prima facie case, specifically challenging whether "Plaintiff [indeed] engaged in speech protected by Title I by publicly criticizing Union leadership about Union policies" and the existence of "a direct causal connection between any such speech and the suspension and fine." Defs' Mot. at 26.

### 1. Protected Speech

■ As to the first element of the prima facie case, the Ninth Circuit held that it was not necessary for Plaintiff to present evidence that he expressed views critical of Union leadership given that Local 142 had not "contest[ed] that its leadership had knowledge of Casumpang's criticism [sic] it at the September 1997 convention."

*Casumpang*, 269 F.3d at 1058. Defendants now argue, however, that Plaintiff's alleged "speech" is "vague, almost wholly uncorroborated, and insufficient as a matter of law." Mot. at 26. Defendants contend that Plaintiff fails to provide evidence that he made sufficiently controversial and/or critical statements. *See id.* at 26–29.

In support of his Opposition, however, Plaintiff submits a declaration in which he states that "Plaintiff has criticized the Local's leadership at union meetings beginning in 1995 and at the union convention in September 1997." Plt.'s Supp. Decl. ¶ 4; *see also id.* at ¶ 3 ("Plaintiff reiterated his criticisms of Local leaders and the Local 142 convention in September, 1997.").[8] Plaintiff also presented evidence to the effect that Plaintiff was vocal at certain meetings, that there "was a lot of back and forth, heated discussions" between Plaintiff and Lapenia including at the 1997 Convention, thereby corroborating his statement. *See* Biga Decl., attached to Luiz Decl., at 109: 1–15, 124: 14–22.[9] The Court finds that the evidence sufficiently demonstrates the existence of a material fact issue with respect to whether Plaintiff indeed "exercised his right to oppose union policies."

### 2. Causal Connection

The parties dispute whether Plaintiff can show a causal connection between his

---

8. Defendants object to paragraphs 3 and 4 of Plaintiff's Supplemental Declaration on, among others, grounds that "[t]he witness lacks personal knowledge of the facts asserted in Paragraph 4." Defendants' Objections at ¶ 34. The Court rejects the objections asserted by Defendants with respect to the portion of paragraph 3 and 4 of Plaintiff's Supplemental Declaration quoted here. Plaintiff is competent to testify as to what he said or did not say at various meetings.

9. Defendants object to the Biga Declaration based on Local Rule 56.1(c)'s requirement that "[d]ocuments referenced in the concise statement shall not be filed in their entirety," but "[i]nstead, the filing party shall extract and highlight only the relevant portions of each referenced document." Defs' Objections at 4. While the Court will not ignore the relevant statements in the Biga Declaration on this occasion, the Court advises Plaintiff that compliance with Local Rule 56.1(c) is mandatory.

criticism of Local 142's leadership and suspension of his status as a member in good standing. According to the Ninth Circuit, the causal link "may be inferred from circumstantial evidence, such as the [Union's] knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory ... decision." *Casumpang,* 269 F.3d at 1059. The Ninth Circuit found, based on the record before it, that there was "sufficient circumstantial evidence ... to support an inference that the ostensible basis for suspension articulated by the Local was a mere pretext to mask its retaliatory intent to punish Casumpang for the expression of his views as a union member." *Id.*

Notwithstanding, Defendants now challenge causation on grounds that (1) the particular Union individuals that imposed Plaintiff's suspension lacked knowledge of his alleged speech activities and (2) temporal proximity is lacking.

### a. *Knowledge*

 Defendants argue that "Casumpang has *no* evidence that the individuals who imposed the suspension and fine were actually aware of his alleged speech." Defs' Mot. at 30; *see also* Defs' Reply at 5–6. In making this argument, Defendants rely on the Declarations of Michael Machado ("Machado"), Chairperson of the Judicial Panel, Robert Girald ("Girald"), who presented the case against Plaintiff to the Judicial Panel, Guy Fujimura ("Fujimura"), Union Secretary–Treasurer, and Lapenia. *See* Mot. at 30–31. Defendants

concede, however, that Lapenia, one of the 13 individuals who filed charges against Plaintiff that ultimately resulted in his suspension just ten days later, was aware of Plaintiff's criticism. *See* Defs' Mot. at 30.

In opposition, Plaintiff asserts that Nate Lum, a member of the Judicial Panel, was a close ally of Lapenia.[10] Also, as discussed, the evidence presented by Plaintiff suggests that he criticized Union leadership at, among other meetings, a full body meeting at the 1997 Convention. *See* Biga Decl., attached to Luiz Decl., at 118: 24—121: 14, 124: 14 –22, 125: 19—126: 2. It appears from the evidence that this meeting was well-attended. *See id.* at 121: 15–18 (indicating that the full-body meeting at the 1997 Convention was "standing room only"). Affording a reasonable inference to Plaintiff, as this Court must do on a motion for summary judgment, it appears unlikely that all of the union individuals who played a role in Plaintiff's suspension did not attend this meeting. Indeed, Defendants admit that Lapenia, who participated in the filing of formal charges against Plaintiff, was the direct recipient of much of Plaintiff's criticism at this, and other, meetings. *See* Defs' Mot. at 30; *see also Casumpang,* 269 F.3d at 1058 (noting that contrary to the present Motion, at the time of the appeal to the Ninth Circuit, "[t]he Local d[id] not contest that its leadership had knowledge of Casumpang's criticisms [sic] it at the September 1997 Convention.").

Furthermore, based on evidence presented by Defendants, Machado was only

---

**10.** Defendants object to Plaintiff's assertion on, among others, grounds that he lacks personal knowledge. The Court is satisfied, based on his experience as a full-time officer with Local 142 for approximately five years as of the time he was suspended in 1998, *see* Third Am. Compl. ¶ 7, that Plaintiff is competent to testify as to his understanding of the relationships between certain members of the Union's leadership.

one of five members[11] that comprised the Judicial Panel that found Plaintiff guilty of violating Article II, Section 1 of the Union Constitution. *See* Defs' Submittal at Ex. P to Fujimura Decl. Defendants produce no competent evidence that the other four individuals of the Judicial Panel did not attend the 1997 Convention or have knowledge of Plaintiff's critical speech. Put simply, the efforts taken by Local 142 to ensure impartiality in the selection of Judicial Panel members, *see, e.g.,* Defs' Submittal at Lapenia Decl. ¶ 5, Fujimura Decl. ¶ 13, Girald Decl. ¶ 9, do not provide a sufficient basis for the Court to conclude, as a matter of law, that the individuals responsible for Plaintiff's suspension lacked knowledge of his alleged speech activity.

### b. *Temporal Proximity*

■ Defendants next challenge the temporal proximity between Plaintiff's alleged speech activity and his suspension. Defendants argue that statements made one to two years prior to Plaintiff's suspension in January 1998 are too remote. *See* Defs' Mot. at 31–32. Defendants also argue that the four month delay between the September 1997 Convention and his suspension defeats causation and that more importantly, causation cannot be established because "the investigation into [Plaintiff's] continued violation of [Article II, Section 1] began in the summer of 1997, *before* the convention in September." Defs' Mot. at 32–33.

The Court disagrees that temporal proximity between the September 1997 Convention and Plaintiff's suspension on January 17, 1998 is lacking.[12] Far from scrutinizing the lapse in time, the Ninth Circuit specifically relied on the proximity between these two events in finding that Plaintiff had sufficiently raised a rebuttable presumption of retaliation. *See Casumpang,* 269 F.3d at 1061.

Furthermore, the Court is not convinced that the mere commencement of the investigation into Plaintiff's alleged electrical contracting violation prior to the September 1997 Convention necessarily defeats causation. Defendants' reliance on *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), in support of this argument is misplaced. In *Breeden,* the United States Supreme Court held that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatsoever of causality." 532 U.S. at 272, 121 S.Ct. 1508. Commencing an investigation into a Union member's alleged wrongdoing as was allegedly done in this case, hardly constitutes a "previously planned" or "previously contemplated" suspension.

In any event, the evidence produced by Defendants renders questionable whether the Union's investigation of Plaintiff's alleged violation of Article II, Section 1 indeed, as they contend, pre-dated the September 1997 Convention. According to Fujimura, "In August 1997, the Union initiated an investigation regarding Casumpang's use of Union resources in his role as president of the Filipino Chamber of Commerce on Maui and possible work as

---

**11.** The other members of the Judicial Panel included: Nate Lum, Daisy Nakamoto, Brandon Daniel, and Merton Davalos. *See* Defs' Submittal at Ex. P to Fujimura Decl.

**12.** Given this finding, the Court finds irrelevant Defendants' challenge to alleged speech at meetings prior to the 1997 Convention.

an electrical contractor." Defs' Submittal at Fujimura Decl. ¶ 5. Fujimura also states that "Casumpang's position with the Chamber of Commerce not only raised concerns about his use of Union resources to conduct Chamber of Commerce business, but also suggested that he might again be operating his own electrical contracting business." *Id.* Though inarticulately worded, Plaintiff appears to state in his declaration that he was unaware that any additional information regarding a possible violation of Article II, Section 1 surfaced during the Filipino Chamber of Commerce inquiry and hence unaware that an investigation of him regarding a possible Article II, Section 1 violation commenced on August 28, 1997. *See* Plt.'s Decl. ¶ 9.

Notwithstanding Fujimura's statements, however, the exhibits attached to his declaration suggest that the Union's investigation of Plaintiff, as of August 1997, centered on suspicion that Plaintiff might be improperly receiving calls or utilizing Union resources for his activities with the Filipino Chamber of Commerce. *See* Defs' Submittal at Exs. F–H attached to Fujimura Decl. For example, the confidential memoranda of August 28, 1997 from Fujimura to various Union personnel is regarding "FILIPINO CHAMBER OF COMMERCE OF MAUI." *Id.* at Ex. H. These memoranda do not ask for information regarding Plaintiff's potential provi-

sion of electrical contracting services. *See id.* Though suspicion may have arisen in the course of the Filipino Chamber of Commerce inquiry, investigation of Plaintiff's potential violation of Article II, Section 1, presumably a much more serious offense, appears to have begun, at the earliest, on or about October 1, 1997, i.e. after the September 1997 Convention,[13] when Plaintiff's opponent in the upcoming election[14] for the position of Maui Division Director, Roger Tacdol, began personally investigating Plaintiff and photographing Plaintiff's van at the residence of a person for whom Plaintiff allegedly was providing electrical contractor services. *See id.* at Ex. I to Fujimura Decl. On the current record, the first letter to Plaintiff from the Union regarding "investigation of gainful position" is dated December 23, 1997, not long after the September 1997 Convention.

In summary, the Court finds that summary judgment is not warranted on grounds that, as a matter of law, causation cannot be established because temporal proximity is lacking or because the Union's investigation of Plaintiff's suspected violation of Article II, Section 1 began prior to his alleged speech activities in September of 1997.

### B. Legitimate Non–Discriminatory Reason

Defendants assert that Plaintiff was "found, after being afforded a full and fair

---

**13.** The Court is unaware of the exact dates in September that the Union Convention took place.

**14.** According to Plaintiff, other business agents, like himself, were involved in various organization such as the Filipino Chamber of Commerce, but he was singled out because he was a contender for the Maui Division Director office. *See* Plt.'s Decl. ¶ 8. The Court notes that Plaintiff's campaigning for the office of Maui Division Director against Tacdol

as of June of 2003 may have further implicated his free speech rights. *See Weyhmueller v. Janitors Union Local No. 1, Svc. Employees Int'l. Union,* 509 F.Supp. 992, 994 (N.D.Ill. 1981) ("There is no dispute in the present case that the plaintiff's active candidacy against the incumbent president of the union and his criticism throughout the campaign of the incumbent leadership's policies are rights protected by sections 101(a)(1) and (2)").

opportunity to be heard, to have deliberately violated both the constitutional prohibition on engaging in other gainful employment and the 1996 cease and desist order." Defs' Mot. at 35. According to Defendants, Plaintiff's "own misconduct led to the disciplinary action imposed on him." *Id.* at 35–36. Plaintiff, on the other hand, states that he "was removed from his status as a union member in good standing in retaliation for his criticism of the local leadership." Plt.'s Supp. Decl. ¶ 5. In other words, Plaintiff challenges the reason supplied by Defendants as pretextual. *See* Plt.'s Opp. at 6.

## C. Pretext

■ The Ninth Circuit expressly found that there was "sufficient circumstantial evidence in the record … to support an inference that the ostensible basis for the suspension articulated by the Local was a mere pretext to mask retaliatory intent to punish Casumpang for the expression of his views as a union member." *Casumpang*, 269 F.3d at 1059. The Ninth Circuit specifically held that "[t]he proximity in time between the suspension of Casumpang's membership in good standing and the expression of his views at the union's convention in September, 1997, combined with the December 12, 1997 amendment to the Local's constitution, were sufficient to raise a rebuttable presumption of retaliation." *Id.* at 1060.

Notwithstanding, Defendants argue that they are entitled to judgment as a matter of law because the record establishes that Plaintiff was suspended for legitimate reasons. *See* Defs' Mot. at 39. Defendants argue that pretext cannot be established because, as already discussed (and rejected as lacking merit), the Judicial Panel members were unaware of Plaintiff's al-

leged protected speech activity. *See id.* at 38. With respect to the Ninth Circuit's reliance on the amendment of Article II, Section 1 in December of 1997, Defendants state that "because the record had not yet been developed on that issue, the Ninth Circuit was unaware that this constitutional amendment, though legitimately related in part to the Union's experience with Casumpang (see *supra* at n. 5), was *irrelevant* to Casumpang's actual suspension. The Judicial Panel specifically determined that it would try him under the prior version of Article II, Section 1, not the amended version, because that was the version in effect when Casumpang allegedly engaged in electrical contracting work." Defs' Mot. at 33.

Plaintiff does not appear to contest that the Judicial Panel at least purported to apply the pre-amendment version of Article II, Section 1, which provided in relevant part:

> Elected and appointed full-time officials of the Local, while on the Local payroll, shall not be permitted to hold any gainful position unless authorized by the Executive Board. Any official who is reported to be so engaged shall be suspended from office forthwith pending an investigation of the facts by the trial committee established under Article XXVI.

Defs' Submittal at Ex. P to Fujimura Decl.; *see also Casumpang*, 269 F.3d at 1059. Indeed, the Decision and Order of the Judicial Panel, attached as Ex. P. to Fujimura's Decl. (included with the Submittal), recites the above pre-amendment version of Article II, Section 1. Plaintiff, however, contends that, in finding him guilty, the Union must have applied the amended version of Article II, Section 1, which provides:

Elected and appointed full-time officials **and Business Agents** of the Local and Divisions, while on the Union's payroll, shall not be permitted to hold any other gainful position unless authorized by the Executive Committee with the approval of the Local Executive Board. **Gainful position shall not be defined by the profitability of any such venture but rather whether the objective was to earn income or derive some benefit or material gain from said position. Gainful position shall include any monetary or personal interests in any business or other undertaking in which such interest would be in conflict with the duties of the official or employee, the interest of the Union, or to [sic] the programs and activities of the Local.**

("1997 Amendment") Plt.'s Supp. Decl. ¶ 7, 8 (emphasis added); *see also Casumpang, 269 F.3d at 1059.* Plaintiff contends that the unamended version of Article II, Section 1 did not apply to business agents such as him and that the term "gainful position" did not, prior to the 1997 Amendment, cover situations where the persons subject to the provision did not receive compensation. *See* Plt.'s Decl. ¶ 14. According to Plaintiff, "the local amended Article II, Section 1 of the Constitution and add [sic] the phrase 'Gainful position shall not be defined by the profitability of any such venture but rather whether the objective was to earn income or derive some benefit or material gain from said position'" "to ensure that Plaintiff w[ould] be convicted of violating the Union's Constitution[.]" *Id.* Plaintiff also maintains that at the hearing conducted by the Judicial Panel, "plaintiff as well as witnesses

testified that all his income was derived outside the scope of Article II, Section 1 of the Constitution. Furthermore, plaintiff did not received [sic] any income for filing permit applications during the scope of his prohibition[,]" and that the "adverse decision against plaintiff had been pre-determined." *Id.* at ¶ 16, 17.

With respect to the significance of the Union's amendment of Article II, Section 1 on December 17, 1997, the Ninth Circuit explained:

> It is undisputed that this amendment to the Local's constitution was made sixteen days after Casumpang won re-election[15] to the office of Maui Division Director and eleven days after Tacdol filed an appeal from the election results. Eleven days after the amendment, the Local ordered Casumpang to provide information regarding whether he had worked as an electrical contractor after June 4, 1996. The record also shows that on December 29, 1997, Casumpang filed a letter accusing the Local of "an attempt to selectively prosecute me as a result of my election to the office of Division Director." **Thus, contrary to the Local's assertion, the record contains evidence that raises a disputed question of fact regarding whether the Local amended its constitution within three months of Casumpang's criticism of the Local leadership to facilitate the suspension of Casumpang's membership in good standing.**

*Casumpang,* 269 F.3d at 1059–60 (emphasis added). The Judicial Panel's at least purported reliance on the pre-amendment version of Article II, Section 1, *see* Defs' Submittal at Ex. P to Fujimura Decl.,

15. The evidence shows that Tacdol was the incumbent, while Casumpang was the challenging candidate, in the 1997 race for the office of the Maui Division Director. *See, e.g.,* Submittal at Ex. B to Fujimura Decl., Ex. P to Plt's Decl.

casts doubt on the Ninth Circuit's conclusion that the 1997 Amendment may have been designed to facilitate Casumpang's suspension. The Union admits, however, that the 1997 Amendment resulted from its experience with the prior (1996) investigation of Casumpang's electrical contracting activities. *See* Fujimura Suppl. Decl. attached to Defs' CSF at ¶ 3.

The Ninth Circuit, however, did not rely solely on the significance of the 1997 Amendment, but also identified the temporal proximity between the September 1997 Convention and Plaintiff's January 17, 1998 suspension as supporting an inference of pretext. *See id.* at 1059–61. With respect to evaluating pretext, the Ninth Circuit advised in *Yartzoff:*

> [t]he plaintiff may succeed "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." **Evidence already introduced to establish the prima facie case may be considered, and "indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation."** Accordingly, this court has observed that a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of "the elusive factual question" of intentional discrimination.

809 F.2d at 1377 (emphasis added) (internal citations omitted).

The Court finds that the evidence in the record presently before it sufficiently demonstrates a disputed fact question as to pretext. First, the temporal proximity between the September 1997 Convention at which time Plaintiff allegedly expressed criticism of Union leadership and the approximately October 1, 1997 investigation by Tacdol into Plaintiff's alleged prohibited provision of electrical contracting services is significant. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002) ("We have recognized previously, that, in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."), *see also Casumpang,* 269 F.3d at 1060, *Yartzoff,* 809 F.2d at 1377.

Additionally, Casumpang presents evidence to support his contention that the Judicial Panel should not have found him guilty under the pre-amendment version of Article II, Section 1, i.e. that the Union's explanation is unworthy of credence. The 1997 Amendment may be probative, aside from the Union's intent to facilitate Plaintiff's suspension, of whether Plaintiff's activities indeed fell within the pre-amendment version of Article II, Section 1. Defendants admit that the 1997 Amendment was related "in part to the Union's experience with Casumpang," Defs' Mot. at 33, which arguably indicates that without the 1997 Amendment, Plaintiff and those similarly situated did not fall within the purview of this section.[16] *See Casumpang,* 297 F.Supp.2d at 1243 n. 10 ("There is circumstantial evidence showing that the amendment to article, II, § 1, although not applied to Casumpang, was directed at him.").

---

16. The Court notes that the 1997 Amendment could just as easily be argued as evidence of the Union's intent that the pre-amendment version of Article II, Section 1 applies to precisely Plaintiff's electrical contracting services.

Furthermore, Plaintiff emphatically denies having improperly received income[17] from his electrical contracting work, and states that he and other witnesses testified that all his income was derived outside the scope or application of Article II, Section 1. of the Constitution and that plaintiff did not receive any income for filing permit applications during the relevant time period. *See* Plt's Decl. at 16.[18] Although the Decision and Order of the Judicial Panel appear to corroborate these statements, *see* Submittal at Ex. P. to Fujimura Decl. at 7, ¶ 27 ("Although the testimony has been presented by Lawrence Cabanilla, Rebecca Cabanilla, John Arisumi, and Eleazar Damaso, that Casumpang did not receive any compensation for electrical contracting work by Casumpang for them, the Panel finds that Casumpang did file permit applications with the County as an electrical contractor and represented that said work would be performed by Sea Breeze Electric."), the Judicial Panel nevertheless concluded that "Casumpang's contention that he merely submitted elec-

trical permit applications as a favor to his friends and did not generate revenues in calendar year 1997 as a contractor, is neither credible nor consistent with the overwhelming evidence presented to the contrary." *Id.* at 7, ¶ 28. The Court finds that Plaintiff should be afforded an opportunity to challenge the Judicial Panel's conclusions to determine whether they were justified or merely a pretext for the Union's retaliatory intent to punish Plaintiff for the expression of his views as a union member. *See Casumpang,* 269 F.3d at 1059, *Yartzoff,* 809 F.2d at 1377.[19]

Finally, like in *Yartzoff,* Casumpang experienced more than one adverse decision by the Union. *See Yartzoff,* 809 F.2d at 1377. Notably, in addition to being charged and suspended in January of 1998 for allegedly engaging in prohibited electrical contracting work, Casumpang's election to the position of the Maui Division Director on November 26, 2003 was overturned by the Local Executive Board on December 19, 2003. *See Casumpang,* 297 F.Supp.2d at 1241. "[T]he fact that [Plain-

---

**17.** Defendants assert that Casumpang admitted in a deposition to receiving compensation for electrical contracting work after the 1996 stipulation. *See* Def.'s Mot. at 36, n. 19. The Court has reviewed Exhibit "K" to the Purtell Decl. (attached to Defs' Submittal), and cannot conclude, as a matter of law, especially in light of Plaintiff's insistence to the contrary, that Plaintiff violated Article II, Section 1 and/or the cease and desist order based on his deposition testimony. Plaintiff has consistently maintained that Lapenia gave him permission to do electrical contracting work for a certain period of time in connection with his prior suspension. *See* Ex. K to Purtell Decl. 184: 16–25; Ex. J to Casumpang Decl., Third Am. Compl. ¶ 24.

**18.** Defendants object to paragraph 14 of Casumpang's declaration on grounds, among others, that the witness lacks personal knowledge of the facts asserted. The Court finds that this objection lacks merit. The Court notes that the portion of paragraph 14 of

Casumpang's declaration relied on is corroborated by evidence presented by Defendants. *See* discussion *infra.*

**19.** At the hearing on the Motion, counsel for Defendants argued that Plaintiff should have, but failed to, cross-examine the Judicial Panel members in the course of discovery. The Court notes that the Ninth Circuit's decision in *Yartzoff,* reversing the district court's grant of summary judgment on some of the plaintiff's employment retaliation claims, contradicts imposition of such a requirement. *See Yartzoff,* 809 F.2d at 1377 ("Although the EPA introduced affidavits of co-workers attesting to Yartzoff's uncooperative behavior, Yartzoff should be afforded an opportunity to cross-examine these individuals and allow the factfinder to weigh the evidence to determine whether the allegations of uncooperativeness were justified.").

tiff] experienced not one, but a series of adverse [Union] decisions during a two-year period is itself probative of pretext and thus of the 'elusive factual question' or intentional discrimination[.]" *Yartzoff*, 809 F.2d at 1377.

## III. ALLEGATION REGARDING MANIPULATION OF THE VOTING PROCESS IN THE AUGUST 2003 MEMBERSHIP APPEAL

■ Defendants argue that the record is undisputed that the Union conducted a fair and neutral appeal process in accordance with its Constitution and the Court's 2003 Order. *See* Defs' Mot. at 34. Plaintiff complains that the Union denied his request for a membership list (containing addresses of all members) and a "mail out voting process." Plt.'s Decl. ¶ 24; *see also* Ex. A (Ltr. dated 6/10/03 from Casumpang to Lapenia) attached to Defs' CSF, Juran Decl. He explains his failure to attend the various membership meetings scheduled by the Union to address his membership appeal on his apparent assumption that the 1998 suspension prohibited him from attending these meetings and also, the Union's purported failure to specify whether he could participate. *See* Plt.'s Decl. ¶ 23–25.

The Court finds that summary judgment should be granted in Defendants' favor with respect to this allegation. First, it is unclear how Plaintiff's allegation regarding the Union's failure to provide him with the Union's membership mailing list and/or conduct a "mailout voting process" with respect to his August 2003 membership appeal relates to his Title I Free Speech Claim. Second, Plaintiff has not identified any evidence of improper conduct with respect to the membership appeal. The Union, on the other hand, produced evidence

demonstrating that it notified Plaintiff that the membership appeal would be conducted in accord with the Union's Constitution and that Union policy prohibited provision of the requested membership list, containing members' names and addresses. *See* Ex. A (Ltr. dated 7/3/03 from Purtell to Luiz)attached to Defs' CSF (Juran Decl.). Section 27.10.5, the constitutional provision applicable to membership appeals such as Plaintiff's, provides:

> After the decision is reached and recorded, the accused shall be called in and informed of the decision by the Chair of the Judicial Panel. If the accused is found guilty, the Chair of the Judicial Panel shall advise them of their rights of appeals to the Local Executive Board to the Local membership and to the International Union.
>
> **In an appeal of the Local membership, the accused shall have the right to appear at each unit membership meeting for the purpose of pleading their case. The membership of each unit shall vote thereon, and the majority of the total membership's votes shall determine the result.**

Ex. S attached to Submittal at Fujimura Decl. (emphasis added).

The evidence presented by Plaintiff regarding a ratification meeting at the Royal Lahaina Resort, *see* Plt.'s Decl. ¶ 24, does not raise a material issue of fact regarding whether the Union was required to provide Plaintiff with the requested mailing list in connection with his membership appeal. Section 27.10.5 of the Union's Constitution, which specifically applies to membership appeals, does not provide the appealing party with a right to obtain the Union membership's mailing list or to a "mail out voting process." It does, however, in direct contradiction to Plaintiff's erroneous

assumption that he could not attend,[20] expressly provide Plaintiff with the right to attend the various membership meetings for the purpose of pleading his case. It also states that voting shall be done at the meetings, not through a "mail out voting process."

In short, Plaintiff has not pointed to any evidence in the record that supports his allegation that the Union improperly conducted his unsuccessful membership appeal in August of 2003.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment. The Court grants the Motion as to Plaintiff's allegation that Defendants manipulated in their favor the voting process in August 2003 with regard to his membership appeal.

The Court denies the Motion as to the remainder of Plaintiff's Title I Freedom of Speech claim. The Court finds that a genuine issue of fact exists as to whether Plaintiff exercised the right to oppose union policies at the 1997 Convention. Furthermore, based on the record presently before it, the Court cannot conclude, as a matter of law, that the individuals involved in Plaintiff's suspension lacked knowledge of his alleged protected speech activity or that temporal proximity is lacking. Finally, the Court finds that Plaintiff has produced evidence to support that the ostensible basis for the suspension articulated by Local 142 was a mere pretext to mask its retaliatory intent to punish Casumpang for

---

20. Notably, Plaintiff did not attempt to seek an Order from the Court allowing him to

the expression of his views as a union member.

IT IS SO ORDERED.

participate in the membership appeal meetings or to obtain the Union's mailing list.